1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JERRY ADAMS,

12              Plaintiff,                     No. CIV S-06-1332 KJM

13        vs.

14   MICHAEL J. ASTRUE,                        ORDER
     Commissioner of Social Security,[1]
15
                Defendant.
16   _____/

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under

19   Title II of the Social Security Act ("Act").  For the reasons discussed below, the court grants in

20   part and denies in part plaintiff's motion for summary judgment or remand, and grants in part and

21   denies in part the Commissioner's cross-motion for summary judgment.  This case is remanded

22   for a determination consistent with this opinion.

23   /////

24   _____

25        [1]  On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social
     Security, replacing Jo Anne B. Barnhart, the original defendant herein.  Pursuant to 42 U.S.C.
     § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted in as the defendant in this
26   action.

I. Factual and Procedural Background

Plaintiff, born September 22, 1957, alleges he became disabled on November 13, 2003, due to bulging discs, arthritis, nerve damage and hepatitis C.  AT 47, 53.  Plaintiff alleges pain in his neck, back, hip and legs caused by work-related injuries in 2002 and 2003.  AT 53, 302.

In a decision dated December 12, 2005, the ALJ determined plaintiff was not disabled.[2]  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff has medically determinable impairments of severe back and neck pain, but that these impairments do not meet

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

1  or medically equal a listed impairment.  The ALJ further found plaintiff is not totally credible,

2  can perform a full range of light work, cannot perform his past relevant work, and based on the

3  medical vocational guidelines, is not disabled.  Administrative Transcript ("AT") 20-21.

4         Plaintiff contends the ALJ failed to properly evaluate his residual functional

5  capacity ("RFC"), improperly weighed the opinions of plaintiff's treating physicians, failed to

6  properly evaluate plaintiff's subjective complaints, failed to consider the combined impact of all

7  his impairments, and improperly determined plaintiff's mental impairments were not severe.

8  II.  Standard of Review

9         The court reviews the Commissioner's decision to determine whether (1) it is

10  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

11  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

12  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

13  Substantial evidence means more than a mere scintilla of evidence, but less than a

14  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

15  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

16  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

17  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

18  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

19  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

20  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

21  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

22  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

23  substantial evidence supports the administrative findings, or if there is conflicting evidence

24  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

25  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

26  /////

1   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

2   1335, 1338 (9th Cir. 1988).

3   III.  Analysis

4               A.  Residual Functional Capacity

5               Plaintiff contends the ALJ's RFC assessment is unsupported by the medical

6   evidence.  More specifically, plaintiff argues the ALJ's determination that he is capable of a full

7   range of light work is contradicted by medical evidence showing postural, manipulative and other

8   restrictions.  The court agrees and finds the ALJ's RFC determination is based on a cursory

9   review of the medical evidence, which fails to account for the opinions of plaintiff's treating

10  physicians.

11              Social Security Ruling ("SSR") 96-8p sets forth the policy interpretation of the

12  Commissioner for assessing residual functional capacity.  SSR 96-8p; see Silveira v. Apfel,

13  204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings ... unless

14  they are plainly erroneous or inconsistent with the Act or regulations").  Residual functional

15  capacity, or RFC, is what a person "can still do despite [the individual's] limitations." 20 C.F.R.

16  §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir.

17  1985) (residual functional capacity reflects current "physical and mental capabilities").

18              SSR 96-8p states that in assessing RFC, the "adjudicator must consider all

19  allegations of physical and mental limitations or restrictions and make every reasonable effort to

20  ensure that the file contains sufficient evidence to assess RFC."  SSR 96-8p. "The RFC

21  assessment must be based on all of the relevant evidence in the case record, such as: medical

22  history, medical signs and laboratory findings, the effects of treatment . . ., reports of daily

23  activities, lay evidence, recorded observations, [and] medical source statements. . . ."  Id.

24              Here, the ALJ found plaintiff's RFC was "consistent with that of a full range of

25  light work (i.e., prolonged standing, walking and lifting not more than 10 pounds and

26  occasionally lifting not more than 20 pounds)." AT 19.  In reaching this determination, the ALJ

4

discredited plaintiff's testimony regarding pain, discredited or ignored the opinions of several of plaintiff's treating physicians, and relied on isolated portions of an evaluation by a non-examining state agency physician, Dr. Corazon C. David, M.D.  AT 18-19.

Although purportedly relying on the state agency physician's opinion, the ALJ failed to account for, or even comment on, the postural and manipulative restrictions assessed by Dr. David.  In an April 2004 assessment, based on a review of records from plaintiffs' treating physicians, Dr. David found plaintiff capable of light work, but opined that he could only occasionally climb, stoop, crouch or crawl.  AT 283.  Dr. David also found plaintiff was limited in his ability to reach in all directions, including overhead.  AT 284.  Although these nonexertional manipulative and postural limitations do not categorically preclude plaintiff from "light work," they would, if credited, preclude the ALJ's use of the medical vocational guidelines.  See 20 C.F.R. § 404.1567(b); Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983) (the grids may be used only if "they describe a claimant's abilities and limitations accurately.").

The ALJ did not explain his failure to include these postural and manipulative limitations in the RFC assessment.  Neither did he explain his complete disregard of other limitations assessed by plaintiff's long-term treating physician, Dr. Dennis A. Chu, M.D.

On October 15, 2003, Dr. Chu reported he would "prophylactically preclude" plaintiff from "heavy lifting, repeated bending, stooping and repetitive overhead activities." AT 344.  These restrictions are consistent with those assessed by Dr. Oscar Abeliuk, M.D., a neurologist who evaluated plaintiff in connection with his back and neck pain.  In a May 7, 2005, report, Dr. Abeliuk opined that plaintiff had a "50 percent reduction" in his ability to perform activities like "bending, stooping, lifting, pushing, pulling and climbing, or other activities involving comparable physical effort."  AT 438-439.  Dr. Abeliuk further opined plaintiff should avoid doing work requiring repetitive motion of the cervical spine, repetitive forceful pushing and pulling with his upper extremities, and prolonged sitting, standing or walking.  AT 439.
/////

1    Notably, the ALJ failed to address these opinions, both of which bear directly on

2   the issue of plaintiff's RFC.  Indeed, the ALJ relied only on early reports from these physicians'

3   records, and either ignored, or improperly discredited, later records showing plaintiff's condition

4   had worsened.

5    For example, the ALJ relied on Dr. Chu's 2003 opinion that plaintiff should avoid

6   repetitive bending, overhead activities, and lifting more than twenty pounds, AT 18, but

7   discredited Dr. Chu's 2004 opinion that plaintiff should discontinue vocational rehabilitation and

8   chiropractic treatment given his unresponsiveness to conservative treatment, and should instead

9   undergo cervical disc fusion surgery.  AT 18-19, 291-294.  The ALJ discredited this opinion

10  because it "appear[ed]" the doctor based his findings primarily upon cervical spinal MRI scans

11  that disclosed only "mild degenerative changes."  AT 18-19.  In fact, Dr. Chu found that a

12  discogram showing degenerative changes supported plaintiff's subjective complaints and likely

13  represented a worsening of his condition, and further commented plaintiff had tried "all

14  conservative therapy without long lasting relief."  AT 291.  Based on these findings and the

15  assessment of orthopedic and spinal surgeon, Dr. Elvert D.Nelson, M.D., Dr. Chu recommended

16  plaintiff discontinue rehabilitation and undergo surgery.  AT 291-294, 248-250.

17   Equally troubling is the ALJ's complete disregard for treating physician[3]

18  Dr. Abeliuk's opinion with regard to plaintiff's limitations.  The ALJ referred in passing to Dr.

19  Abeliuk as an "examining neurologist" and credits only his December 2003 opinion that

20  plaintiff's disc disease was "treatable conservatively rather than by surgery and would preclude

21  him from performing heavy work."  AT 18, 223-235.  The ALJ, however, ignored other evidence

22

_____

23    [3] The regulations broadly define the term "treating physician" as any physician who "has
provided [the claimant] with medical treatment or evaluation and who has or has had an ongoing
24  treatment relationship with [the claimant]."  20 C.F.R. § 404.1502.  The record shows
Dr. Abeliuk is most appropriately designated as a treating physician given his continued
25  evaluation of plaintiff from 2003 through 2004.  See AT 222-235, 437-450.  Defendant appears
to concede this point.  See Mem. In Supp. of Def't's Cross-Motion for Summ. J. at 3:3-10, 8:19-
26  26, 10:13-21.  For the weight given treating physician's opinions, see pages 7-8 infra.

1    that plaintiff's condition worsened after this assessment, that his doctors had determined

2    conservative care was not working, and that Dr. Abeliuk revised his 2003 opinion in 2004,

3    concluding that plaintiff should undergo surgery and avoid a number of work activities, including

4    prolonged sitting, standing and walking – all of which are required for the performance of light

5    work.  AT 438-444;  20 C.F.R. § 404.1567(b).

6            Because the ALJ failed to even consider the opinions of plaintiff's treating

7    physicians or discredited them for reasons not supported by the record, the court finds the ALJ's

8    RFC assessment was not "based on all of the relevant evidence in the case record."  SSR 96-8p.

9    If the ALJ chooses to reject these opinions, he must first consider them, and then provide either

10   "clear and convincing" or "specific and legitimate" reasons for doing so.  Lester v. Chater,

11   81 F.3d 821, 830-31 (9th Cir. 1995).  Here, the ALJ did neither.

12            B.  Treating Physicians' Opinions

13            As discussed in the previous section, the ALJ failed to discuss the limitations

14   assessed by plaintiff's treating physicians, Drs. Chu and Abeliuk.  The ALJ did, however,

15   consider the opinion of another treating physician, Dr. Navnit Bhatia, M.D.,[4] which he found

16   "not credible."  AT 19.  Plaintiff contends the ALJ's rejection of this opinion was in error.

17            The weight given to medical opinions depends in part on whether they are

18   proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821,

19   830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional,

20   who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v.

21   Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

22            To evaluate whether an ALJ properly rejected a medical opinion, in addition to

23   considering its source, the court considers whether (1) contradictory opinions are in the record,

24   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

25   _____

26        [4] Dr. Bhatia began treating plaintiff after Dr. Chu retired in 2005.  AT 537.

1    treating or examining medical professional only for "clear and convincing" reasons.  Lester,

2    81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may

3    be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id.

4    at 830.  While a treating professional's opinion generally is accorded superior weight, if it is

5    contradicted by a supported examining professional's opinion (e.g., supported by different

6    independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

7    1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

8    any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

9    findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory,

10   minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

11   non-examining professional, without other evidence, is insufficient to reject the opinion of a

12   treating or examining professional.  Lester, 81 F.3d at 831.

13          On September 23, 2005, treating physician Dr. Bhatia opined that plaintiff's

14   impairments precluded him from sitting for more than three to four hours total, standing or

15   walking for more than one to two hours total, and lifting more than five pounds.  AT 477-478.

16   Dr. Bhatia also opined that plaintiff had limitations in reaching, handling, feeling, pushing and

17   pulling, in addition to significant postural limitations (climbing, balancing, stooping, crouching,

18   kneeling, crawling, and bending).  Id.

19          The ALJ discredited this opinion, stating:  "(1) it was not supported by any

20   medical treatment records; (2) it was not consistent with three cervical MRI scans which were all

21   only mildly abnormal; (3) the claimant has never required surgery; (4) it appears to have been

22   based upon the claimant's self-serving subjective statements; (5) it is at odds with the fact that

23   the claimant has been well maintained with conservative medical care; (6) it is at odds with the

24   functional assessment from that of the nonexamining state agency physician [Dr. David]; [and]

25   (7) it is inconsistent with the claimant's wide ranging daily living activities which include riding

26   his motorcycle, fishing and riding his bicycle daily."  AT 19.

1          When Dr. Bhatia made this assessment, he had not been treating plaintiff for very

2    long.  AT 537, 476-480.  Although Dr. Bhatia's treatment notes are few, they show he made

3    objective findings, for example, concerning plaintiff's limited range of motion in his neck and

4    extremities.  AT 476.  Thus, the ALJ's comment that Dr. Bhatia's opinion "appears to have been

5    based upon the claimant's self-serving subjective statements" misstates the record.  AT 19.

6    Dr. Bhatia did report that plaintiff was using a cane, and complained of pain in his neck and back

7    with numbness in his feet.  AT 476.  The pain plaintiff described was recorded consistently by all

8    of his treating physicians.  Dismissing the complaints as "self serving" without further analysis

9    does not constitute a "specific and legitimate" reason justifying the rejection of Dr. Bhatia's

10   opinion.  Lester, 81 F.3d at 830.  Furthermore, Dr. Bhatia's  comments are consistent with and

11   supported by the extensive medical records of treating physicians Drs. Chu, Abeliuk and Nelson.

12   See, e.g., AT 248-249, 291, 293-294, 295-296, 438-440 (noting significant cervical and lumbar

13   impairments causing plaintiff's pain, as well as the failure of conservative care).  In fact, the

14   limitations assessed by Dr. Abeliuk in 2004 are very much consistent with Dr. Bhatia's

15   assessment.  AT 438-444 (noting a significant decrease in plaintiff's ability to bend, stoop, lift,

16   push, pull and climb, and finding he should avoid prolonged sitting, standing, and walking, as

17   well as repetitive motions of the cervical spine).  For these reasons, the court finds the ALJ's

18   determination that Dr. Bhatia's assessment was "not supported by any medical treatment records"

19   to be unsupported by substantial evidence.  AT 19.

20          The ALJ's reasoning, that Dr. Bhatia's opinion was "not consistent with three

21   cervical MRI scans which were all only mildly abnormal," also is unsupported, and fails to

22   account for other evidence showing significant impairments.  For example, in February 2004,

23   Dr. Nelson reported that an MRI on January 20, 2004, showed "severe spondylosis" in plaintiff's

24   cervical area.  AT 248.  Dr. Nelson also opined that "mild narrowing of the [lumbar] spinal canal

25   . . . is not amenable to surgical intervention [and that plaintiff] . . . may have to live with his

26   chronic low back pain."  AT 249.  Similarly, Dr. Chu's records reveal the continued presence,

1   and worsening, of objective medical conditions.  For example, in a March 4, 2004 report,

2   Dr. Chu commented that a cervical discogram from March 4, 2004, revealed degenerative

3   changes with foraminal narrowing, and that based on plaintiff's worsening condition and

4   Dr. Nelson's recommendation, surgery was appropriate.  AT 295-296.   Likewise, Dr. Abeliuk's

5   records show plaintiff had "decreased range of motion of the cervical spine, with significant

6   tenderness[,] decreased right upper extremity strength," and "decreased range of motion of the

7   lumbosacral spine."  AT 440.

8          As discussed above, the ALJ was incorrect in finding the "claimant has never

9   required surgery" and that he was "well maintained with conservative medical care."  Further, to

10  the extent the ALJ rejected Dr. Bhatia's assessment because it was inconsistent with the

11  assessment of non-examining state agency physician Dr. David, the ALJ failed to articulate

12  appropriate reasons for finding Dr. David's assessment more persuasive than Dr. Bhatia's.

13  Lester, 81 F.3d at 831 (opinion of non-examining professional, without other evidence,

14  insufficient to reject opinion of treating or examining professional).  Although the ALJ rejected

15  Dr. Bhatia's opinion for the other reasons cited above, several of those reasons are unsupported,

16  or directly contradicted, by substantial evidence in the record.  As such, they fail to meet the

17  "specific and legitimate" standard.  Lester, 81 F.3d at 830.

18          Finally, the ALJ cited plaintiff's daily activities as a basis for discrediting

19  Dr. Bhatia's opinion.  Specifically, the ALJ found the opinion was inconsistent with plaintiff's

20  "wide ranging daily living activities which include riding his motorcycle, fishing and riding his

21  bicycle daily."  AT 19.  The ALJ overstates the nature of plaintiff's daily activities.  For example,

22  plaintiff testified that he "tried to go fishing three or four times" in 2005, but he only lasted a

23  couple hours at a time and that he had to "back his car up to the water" so he did not have to

24  walk very far.  AT 534-545.  Further, plaintiff's wife reported that riding his motorcycle caused

25  plaintiff "to be laid up for days."  AT 93.  Plaintiff did tell his therapist in June 2004 that he was

26  riding his "bike" every day "since his last appointment," but those notes do not include

1    information about the length of his rides, or the effect on him afterwards.  AT 434-436.  Notes

2    from later sessions reflect plaintiff's report of being in a great deal of pain.  Id.  The ALJ's

3    overstatement of plaintiff's daily activities does not constitute a "specific and legitimate" reason

4    for rejecting Dr. Bhatia's opinion.

5            The court declines to credit Dr. Bhatia's opinion as a matter of law because it is

6    unclear whether, if credited, a finding of disabled would be mandated.  See Varney v. Sec'y of

7    Health & Human Servs., 859 F.2d 1396, 1401 (9th Cir. 1988); Smolen, 80 F.3d at 1292; Benton

8    v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003) (crediting an opinion does not necessarily

9    resolve the case).  As discussed above, the ALJ failed to consider the opinions of Dr. Chu and

10   Abeliuk in assessing plaintiff's RFC, and provided insufficient reasons for rejecting Dr. Bhatia's

11   RFC assessment.  On remand, the ALJ should consider each of these opinions in assessing

12   plaintiff's RFC, and assign each one appropriate weight based on the applicable standards.

13                   C.  Credibility

14           Plaintiff also contends the ALJ improperly discredited his subjective complaints.

15   The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's

16   discretion if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v.

17   Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

18   credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

19   Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

20   supported by "a specific, cogent reason for the disbelief").

21           In evaluating whether subjective complaints are credible, the ALJ should first

22   consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan,

23   947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an

24   impairment, the ALJ then may consider the nature of the symptoms alleged, including

25   aggravating factors, medication, treatment, and functional restrictions.  See id. at 345-47.  The

26   ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent

                                                    11

1   statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to

2   seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily

3   activities.  Smolen, 80 F.3d at 1284; see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60

4   FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature,

5   severity, and effect of symptoms, and inconsistencies between testimony and conduct also may

6   be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A

7   failure to seek treatment for an allegedly debilitating medical problem may be a valid

8   consideration by the ALJ in determining whether the alleged associated pain is not a significant

9   nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).

10  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882

11  F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v.

12  Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the

13  claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must

14  be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599

15  (9th Cir. 1999).

16          Here, plaintiff testified that he continued to take Valium and Soma, both muscle

17  relaxants, for pain in his neck, back, arms and legs, and that the pain had not "been under a five

18  [on a scale of one to ten] in a long time." AT 532, 536.  Plaintiff further testified he could walk

19  two blocks before pain makes him stop, could sit for about an hour at a time, and has trouble

20  lifting even a gallon of milk.  AT 534.  Plaintiff also testified that walking, sitting too long, and

21  driving exacerbates his pain. AT 537.

22          The ALJ found plaintiff's testimony was "not substantially credible" and that his

23  subjective complaints were "out of proportion to the overall weight of the objective medical

24  evidence. . . ." AT 18.  In discrediting plaintiff, the ALJ wrote:  "the record shows that . . .

25  [plaintiff's] impairments have been well controlled with conservative medical care . . . rather

26  than surgery, have not required hospitalization or the use of assistive devices for ambulation,

1  have not been manifested by significant objective clinical findings, have not resulted in

2  radiological imaging studies disclosing findings consistent with severe lumbar or cervical

3  pathology, and have not compromised the claimant's ability to move about and get around

4  without much difficulty."  AT 18.

5         The ALJ's laundry list of reasons is unsupported, and in fact contradicted, by

6  substantial evidence in the record.  First, as discussed above, plaintiff's treating physicians

7  eventually concluded that conservative medical was not adequately controlling plaintiff's

8  impairments.  For example, on April 27, 2004, Dr. Chu wrote that plaintiff "has tried all

9  conservative therapy without long lasting relief."  AT 291.  Similarly, on February 12, 2004,

10  Dr. Nelson reported, "[p]hysical therapy was counterproductive," a "lumbar epidural cortisone

11  injection was ineffective" and that plaintiff "may have to live with his chronic low back pain."

12  AT 248-249.  Dr. Abeliuk concurred, opining on June 22, 2004 that "his condition has worsened,

13  especially in terms of his symptoms, and . . . further workup has determined the need of a

14  surgical procedure."  AT 449.  Secondly, although it is unclear whether a cane was prescribed,

15  the record shows plaintiff did in fact use a cane to assist with ambulation.  See, e.g.,  AT 503,

16  498, 488, 406, 447, 476.

17         The ALJ's specific comment that plaintiff's impairments "have not been

18  manifested by significant objective clinical findings,"also is unsupported by the record.  For

19  example, an MRI on January 20, 2004, showed plaintiff had "severe spondylosis" in the cervical

20  area for which Dr. Nelson recommended surgery, AT 248-249, and "chronic

21  musculoligamentous injury of the lumbosacral spine."  AT 448.  These results also contradict the

22  ALJ's statement that plaintiff's impairment did not "result[] in radiological imaging studies

23  disclosing findings consistent with severe lumbar or cervical pathology."  AT 18.  Indeed, one of

24  plaintiff's treating physicians, Dr. Abeliuk, relied on plaintiff's "history of well-documented

25  cervical disease, as per MRI studies" in assessing significant limitations on his ability to work.

26  AT 448.  The record also shows plaintiff's physicians repeatedly found he had limited range of

1    motion in his neck and back, and that tests of plaintiff's nerves in his upper and lower extremities

2    produced abnormal results.[5]  See, e.g., AT 344, 443, 447, 476, 498, 488, 503.

3              Finally, the ALJ's conclusory statement that plaintiff's impairments "have not

4    compromised his ability to move about and get around without much difficulty," is supported

5    only by the ALJ's overstated characterization of plaintiff's daily activities.  AT 18.  As discussed

6    above, plaintiff's attempts to fish and ride his motorcycle were limited, and the light chores he

7    performed around the house – preparing microwave meals, hosing off the driveway, occasional

8    shopping, loading the dishwasher – are not inconsistent with his allegations of ongoing, severe

9    pain.  See Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("This court has repeatedly

10   asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any

11   way detract from her credibility as to her overall disability.  One does not need to be utterly

12   incapacitated in order to be disabled.").  In making this assessment about plaintiff's mobility, the

13   ALJ did not consider plaintiff's continued use of prescribed pain medication, aggravation of pain

14   with exertion, or plaintiff's use of cane.  See, e.g., AT 234, 406, 440, 447, 476, 488, 497, 503.

15             No evidence of malingering is present in the record.  Accordingly, the ALJ was

16   required to present clear and convincing reasons for rejecting plaintiff's testimony.  The reasons

17   relied on by the ALJ are either contradicted by or poor reflections of the record, and therefore are

18   not clear and convincing.

19             The court declines to credit plaintiff's testimony as a matter of law because here

20   again it is unclear whether, if credited, a finding of disabled would be mandated.  See Varney v.

21   Sec'y of Health & Human Servs., 859 F.2d 1396, 1401 (9th Cir. 1988); Smolen, 80 F.3d at 1292;

22   Lester, 81 F.3d at 834 (where the ALJ improperly rejects the claimant's testimony regarding his

23   limitations, "and the claimant would be disabled if his testimony were credited," remand is

24

_____

25        [5] The record shows abnormal "EMG-NCV" testing of plaintiff's upper and lower
     extremities.  AT 344.  Electromyography/Nerve Conduction Studies ("EMG-NCV") test for the
26   presence of disorders of the nerves and muscles. See The Merck Manual 1758 (18th ed. 2006).

1   appropriate.).  It still remains to be determined whether, given plaintiff's limitations, there are

2   any jobs in the national economy he can perform.

3                       D.  The ALJ's Articulation of Plaintiff's Severe Impairments

4              Plaintiff contends the ALJ erred by failing to consider plaintiff's "multiple

5   impairments" including cervical and lumbar disc bulges, disc protrusion, radiculopathy, and

6   chronic musculoligamentous injury of the lumbosacral spine.  Specifically, plaintiff alleges the

7   ALJ should have considered these conditions in combination with his impairment of "severe

8   back and neck pain."

9              The ALJ's finding at step two that plaintiff had "severe neck and back pain" was

10  based on all the conditions articulated above, and was sufficient to describe his impairments.

11  Because the ALJ's articulation of plaintiff's impairments encompassed these underlying

12  conditions, the court finds the ALJ did consider these conditions "in combination."

13             Plaintiff also alleges the ALJ improperly determined plaintiff's depression was

14  not a severe impairment.  An impairment is "not severe" only if it "would have no more than a

15  minimal effect on an individual's ability to work, even if the individual's age, education, or work

16  experience were specifically considered."  SSR 85-28; Bowen v. Yuckert, 482 U.S. 137 (1987).

17  "The step-two inquiry is a de minimis screening device to dispose of groundless claims."

18  Smolen, 80 F.3d at 1290; see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).

19  Impairments must be considered in combination in assessing severity.  20 C.F.R. § 404.1523.

20             Here, the ALJ found plaintiff's depression did not impose "more than slight

21  limitations in his nonexertional functioning" and therefore did not constitute a severe mental

22  impairment.  AT 20.  In reaching this conclusion, the ALJ wrote, "the record shows that despite

23  the claimant's complaints of depression, he has not been under the care of a mental health

24  therapist [and] has not been prescribed psychiatric medications . . . ."  AT 19.  Here again, the

25  ALJ misstates the record.  The record shows plaintiff did in fact see a therapist and at different

26  points took Valium for anxiety and Zoloft for depression.  AT 412, 404-408, 434-436, 489.

1    Despite the ALJ's misstatement of the record in this regard, his determination that

2   plaintiff's depression was not severe was based on other, substantial evidence in the record.

3   Specifically, the ALJ relied on the evaluation of examining, consultative psychiatrist Dr. Pavitar

4   Cheema, M.D.  After examining plaintiff on August 24, 2004, Dr. Cheema concluded plaintiff's

5   depression would not preclude him from understanding and carrying out complex jobs,

6   maintaining attention, concentration, persistence and pace and socially interacting with others.

7   AT 413.  The ALJ relied on Dr. Cheema's opinion over that of a nonexamining state agency

8   psychiatrist who opined that plaintiff's depression would cause moderate restrictions in

9   maintaining concentration, persistence and pace.  AT 429.  The ALJ rejected the agency

10   psychiatrist's opinion because it was "unsupported by any mental health evidence in the record."

11   AT 20.  Indeed, none of the other mental health professionals who examined plaintiff made

12   similar findings.  Lester, 81 F.3d at 831 (opinion of non-examining professional, without other

13   evidence, insufficient to reject opinion of treating or examining professional).  Accordingly, the

14   ALJ was entitled to rely on Dr. Cheema's opinion in finding plaintiff did not have a severe

15   mental impairment.

16   IV.  Conclusion

17    In accordance with the foregoing, IT IS HEREBY ORDERED that:

18    1.  Plaintiff's motion for remand is granted in part, and denied in part;

19    2.  The Commissioner's cross-motion for summary judgment is granted in part,

20   and denied in part; and

21    3.  The case is remanded for further decision consistent with this order.

22   DATED:  September 28, 2007.

23

24   _____
     U.S. MAGISTRATE JUDGE
25

KJM:mb
26   Adams.ss

16